CITY OF HOUSTON, Appellant

v.

HOUSTON FIREFIGHTERS' RELIEF
AND RETIREMENT FUND,
Appellee

NO. 14-14-00437-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed September 8, 2016

David M. Feldman, Houston, TX, for Appellant

Travis James Sales, John B. Wallace, Houston, TX, Thomas R. Phillips, Austin, TX, for Appellee

Panel consists of Justices Christopher, Donovan, and Wise.

## OPINION

John Donovan, Justice

Appellant, City of Houston ("the City"), sued appellee, Houston Firefighters' Relief and Retirement Fund ("the Fund"), seeking a declaration that the statute establishing the current pension system for the City's firefighters is unconstitutional. The City appeals the trial court's grant of the Fund's motion for summary judgment and denial of the City's motion for summary judgment. We affirm and hold that the statute is constitutional.

## I. BACKGROUND

Since early in the Twentieth Century, there has been some form of pension system applicable to the City's firefighters although before 1975, the City was not required to make contributions. For almost forty years before 1975, the City operated under Texas Revised Civil Statute Article 6243e, which established a pension fund in cities having an organized fire department with equipment valued at $1,000 or more. Each city had a board of trustees to administer the fund in that city, and contributions came from firefighters and fire insurance companies.

In 1975, Texas voters passed an amendment to the Texas Constitution, entitled "State and local retirement systems," Tex. Const. Art. XVI, § 67, which, inter alia, authorizes the Texas Legislature to enact general laws establishing pension systems for public employees and officers. *See id.* § 67(a)(1). Section 67 requires that financing of benefits "be based on sound actuarial principles," that assets of a system be held in trust for the benefit of members and not diverted, and that non-statewide systems be administered by a board of trustees. *Id.* § 67(a)(1), (f). Section 67 was the first time the Constitution expressly granted general authority to enact pension laws although the Legislature had previously exercised such authority (through, e.g., the above-cited Article 6243e).

That same year, the Legislature enacted Texas Revised Civil Statute Article 6243e.2, providing for a firefighters' retirement fund which, in effect, was applicable only to Houston, per the population bracket of cities to which the statute applied. That fund was also administered by a board of trustees, and the statute required contributions from firefighters and the City.

The City operated under the 1975 statute for many years—until 1997, when the Texas Legislature repealed it and enacted Texas Revised Civil Statute Article 6243e.2(1) ("the Act")—the current statute at issue in this case. Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1) (West 2010). The Act established a "Firefighters' relief and retirement fund" in each incorporated municipality with a population of at least 1,600,-000 and a fully paid fire department. *Id.* § 2(a). It is undisputed that based on the defined population bracket, the Act currently applies only to the City of Houston.[1]

The extensive Act contains multiple subsections. We summarize here those relevant to the current dispute and will discuss them later in more detail. The Act calls for a ten-member board of trustees ("the Board"), six of whom constitute a quorum for transacting business of the Board. *Id.* § 2(b), (j). The Board consists of the mayor or an appointed representative of the mayor, the city treasurer, five firefighters who are members of the fund and elected by members, a retired firefighter who is

---

1. There are numerous other statutes creating different pension systems for employees of cities based on defined population brackets. *See, e.g.,* Tex. Rev. Civ. Stat. Arts. 6243b; 6243e.1; 6243e-2; 6243j; 6243n; 6243o.

elected by other retired firefighters, and two citizens elected by the other trustees. *See id.* § 2(b)–(e). The role of the Board is to receive, manage, and disburse the Fund, hear and determine applications for benefits, and designate the beneficiaries or persons entitled to participate as provided by the Act. *See id.* § 2(k). The Act prescribes a variety of powers and duties bestowed on the Board to accomplish this purpose. *See id.* § 2, 3. The Act also prescribes standards regarding eligibility for retirement, disability, and death benefits and the amount of such benefits, *see id.* §§ 4–12, 14–16, 18, requirements for membership in the Fund, *see id.* § 13, and standards for calculating member and City contributions. *See id.*

The City has operated under this Act for many years but filed the present suit in 2014, seeking a declaratory judgment that the Act violates four separate provisions of the Texas Constitution: (1) the separation-of-powers principle; (2) the prohibition against special and local laws; (3) the constitutional requirement that cities have a choice in their pension systems; and (4) the requirement that pension benefits be reasonably related to a participant's contributions. In practicality, the City's primary complaints underlying its constitutional challenges are that (1) the Act grants broad powers to the Board without the City having any right to appeal, and (2) the City has no control over the amount of its contributions to the Fund which have developed into a heavy financial burden on the City.

Each party filed a traditional motion for summary judgment, with the City asserting the Act is unconstitutional as a matter of law for the four reasons alleged in its petition and the Fund arguing the Act is constitutional as a matter of law. The trial court signed an order granting the Fund's motion, denying the City's motion, and dis-

missing the City's claims with prejudice. The City now appeals.

## II. ANALYSIS

In four issues, the City contends the trial court erred in denying its motion for summary judgment and granting the Fund's motion. When the parties file cross-motions for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). We review a summary judgment *de novo*. *Knott*, 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in its favor. *Id.* Additionally, courts apply a presumption of constitutionality to statutes; therefore, the party alleging that a statute is unconstitutional has the burden of proof. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex.1995). We will examine separately the four grounds on which the City contends the Act is unconstitutional.

### A. Whether the Act is an unconstitutional delegation of powers

First, the City contends that the Act violates the separation-of-powers principle in the Texas Constitution because it is an improper delegation to a non-legislative entity.

The Constitution vests legislative power in the Legislature. *See* Tex. Const.

Art. III, § 1. Further, the constitution forbids each of the three distinct departments of government (legislative, executive, and judicial) from exercising the powers attached to the other departments except where expressly permitted by the constitution. *See id.* Art. II, § 1. Thus, the Legislature may not delegate its legislative power to others. *See Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465–66 (Tex.1997). Yet, "legislative delegation of power to enforce and apply law is both necessary and proper" because of the impossibilities inherent in a complex society for the Legislature to contend "with every detail involved in carrying out its laws." *Id.* at 466. Therefore, the Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). The Legislature may delegate powers to municipal and state agencies established to carry out legislative purposes as long as the Legislature establishes "reasonable standards" to guide the agency in exercising those powers. *See id.*; *Boll Weevil*, 952 S.W.2d at 467.

Delegations to private entities raise more troubling constitutional issues than delegations to public entities because private delegates are not elected by the people, appointed by a public official or entity, or employed by the government and such delegations may allow one with a

personal or pecuniary interest to adversely affect the public interest. *See FM Props.*, 22 S.W.3d at 874; *Boll Weevil*, 952 S.W.2d at 469. Nevertheless, private delegations are frequently necessary and desirable but are subject to more stringent requirements and less judicial deference than public delegations, and courts apply an eight-factor test to analyze constitutionality. *See FM Props.*, 22 S.W.3d at 874; *Boll Weevil*, 952 S.W.2d at 469–72.[2]

The City argues that the delegation to the Board under the Act is to a private entity and applying the factors, the delegation is unconstitutional. Alternatively, the City claims that even if the Board is a public entity, the delegation is unconstitutional because the Legislature failed to establish reasonable standards to guide the Board in exercising those powers. We agree with the Fund that the Board is a public entity and the Act is not an unconstitutional delegation.

### 1. The Board is a public entity.

Initially, we point out that the City does not cite any cases holding that a board responsible for administering a pension system for public employees is a private entity for purposes of analyzing constitutionality of a delegation. However, the City relies heavily on *Boll Weevil* when arguing the Board is a private entity. In that case, the Legislature enacted a statute providing for creation of a foundation to address the economic threat to the Texas cotton

**2.** Because we ultimately conclude the delegation to the Board in this case is to a public entity, we need not apply the eight factors, but they are: (1) Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government? (2) Are the persons affected by the private delegate's actions adequately represented in the decision-making process? (3) Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals? (4) Does the

private delegate have a pecuniary or other personal interest that may conflict with its public function? (5) Is the private delegate empowered to define criminal acts or impose criminal sanctions? (6) Is the delegation narrow in duration, extent, and subject matter? (7) Does the private delegate possess special qualifications or training for the task delegated to it? (8) Has the Legislature provided sufficient standards to guide the private delegate in its work? *FM Props.*, 22 S.W.3d at 874; *Boll Weevil*, 952 S.W.2d at 472.

industry caused by the boll weevil by implementing eradication programs in certain zones and assessing cotton growers for the costs. *Boll Weevil*, 952 S.W.2d at 456–57. The statute required that the creation of zones and determination of assessments be approved by a certain number of growers, but the foundation board, elected by and consisting of growers, was given broad powers including (1) determining what eradication programs to conduct and the amount of debt incurred to finance the programs, (2) imposing penalties for late payment of assessments, which could include destruction of a grower's crop, a misdemeanor conviction, and a lien placed on the crop, and (3) entering private property for any purpose including treating, monitoring, and destroying a crop. *See id.* at 457–58.

After growers in a certain area voted to establish a zone and approved assessments, other growers in that zone sued the foundation, challenging the referenda and assessments on various constitutional and statutory grounds. *See id.* at 459–60. The Supreme Court of Texas held, among other rulings, that the statute was an unconstitutionally broad delegation of authority to the foundation. *Id.* at 457, 475. The supreme court first had to decide whether the foundation was a public or private entity, to determine the proper standard to apply. *See id.* at 470–71. The court acknowledged that such decision proved difficult, as may occur with categorizing other bodies, because of competing considerations. *Id.* at 470. For instance, the referenda through which growers ratified a zone, elected board members, and determined the assessments were not purely private affairs, being conducted according to state law; yet, the referenda were not popular elections because only eligible growers voted. *See id.* Further, the foundation retained qualities of a state agency because it was exempt from taxation, enjoyed official immunity, published its rules per state regulations, and was subject to certain statutes, including the Open Meeting Act; on the other hand, foundation funds were not state funds, the foundation was not subject to state purchasing or auditing requirements, board members were not required to take oaths of office, and there generally was no right to appeal foundation decisions. *See id.* In determining the foundation was a private entity, the court ultimately relied on the fact that "courts have universally treated a delegation as private where 'interested groups have been given authoritative powers of determination, usually in conjunction with a public administrative agency.'" *Id.* at 470–71 (quoting Louis L. Jaffe, *Law Making by Private Groups*, 51 Harv. L. Rev. 201, 234 (1937)).

■ In the present case, the City acknowledges competing factors it characterizes as pointing to a public or private delegation. The City cites the following as indicating a public delegation: the Board enjoys governmental immunity; *see* Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1), § 3(*l*); the Fund must maintain tax-qualified status under the Internal Revenue Code and be administered in compliance with that code, regulations of the United States Treasury Department, and rulings of the Internal Revenue Service concerning public retirement systems; *see id.* § 14; each trustee must take an oath of office; *see id.* § 2(g); investment of surplus funds is governed by the Texas Government Code; *see id.* § 3(a); members may appeal certain board decisions to district court; *see id.* § 12; the Fund must comply with the Texas Open Meetings Act; *see* Tex. Att'y Gen. LO-MW-506, 1982 WL 173966, at *2 (1982); and the Fund must report certain information to the Pension Review Board which may inspect the Fund's record. *See* Tex. Gov't Code Ann. § 801.204 (West

2012); §§ 802.001–802.108 (West 2012 & Supp. 2016).

The City cites the following as indicating a private delegation: money collected by the Fund is placed in the Fund, not the state treasury; *see* Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1), § 2(k), (*l*); the Fund is not subject to state purchasing requirements; *see generally id.* Art. 6243e.2(1); the Board is not subject to sunset review and serves in perpetuity; *see id.* § 2; the Board need not make its final and binding rules, policies, and procedures in accordance with state law; *see id.* § 2(p)(1), (p–1); information about members is generally excluded from public disclosure; *see id.* § 17(a); and the Board's decisions are final and binding on the City, which has no right of appeal. *See id.* §§ 2(p–1), 12.

After citing those competing concerns, the City maintains that the overriding feature making the delegation one to a private entity, per *Boll Weevil*, is that the Board is controlled by private interested parties because six of the ten trustees, and thus a quorum, are members of the fund (active and retired firefighters) and thereby beneficiaries. However, we agree with the Fund that *Boll Weevil* is distinguishable from the present case and the Board is a public entity.

First, there was no constitutional provision authorizing creation of the *Boll Weevil* foundation. *See generally* 952 S.W.2d 454. In contrast, the Texas Constitution expressly authorizes the Legislature to create pension systems for public employees with administration by a board of trustees, indicating the inherently public nature of the Fund and its Board. *See* Tex. Const. Art. XVI, § 67(a), (f).

Next, the *Boll Weevil* court stated that "courts have universally treated" interested bodies as private entities but did not express that such aspect will always dictate the body is a private entity. *See* 952 S.W.2d at 470–71. In this regard, the membership and the role of the *Boll Weevil* foundation board was significantly different than that of the Fund Board. The *Boll Weevil* board consisted of private citizens, cotton growers, who wielded broad authority over the crops of other cotton growers, i.e., competitors. *See id.* at 457–58, 474. And, the purpose of that foundation may be construed as protecting a private industry from a blight, albeit with an indirect benefit to the public. *See id.* at 457. In contrast, eight of the ten trustees of the Fund's Board are current or retired public employees, (the active or retired firefighters, the mayor or his or her representative, and the city treasurer). We recognize that the six active or retired firefighter trustees are elected by other firefighters, and those trustees and electors have an interest in the matters they are administering. However, they serve on the Board solely to administer benefits to public employees rendering firefighting services to the public—as the Fund asserts, "a fundamentally public concern." Although service on the Board is not part of their firefighting duties, the firefighter trustees must first be public employees in order to serve on the Board, and they cannot lose their city pay for the time that they serve at board meetings. *See* Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1), § 2(*l*). Additionally, we would have difficulty classifying the Board as a private entity when the Mayor and city treasurer also serve as trustees in order to administer benefits to public employees.

Further, the fact that six trustees are "interested" ensures representation on the Board by those who share and thus understand the needs of the beneficiaries. The supreme court of another large state has pointed out that (1) "the interested model of decisionmaking" in public-employee pension systems through administration by

member trustees has long been a standard feature of the composition of most public retirement system boards; (2) such model is based on the theory that having a blend of individuals, each with a clear stake in many decisions, represent all stakeholders promotes competence and fairness; and (3) such arrangement may have significant financial benefits because trustees who are also plan members may improve the performance of the fund due to their direct financial interest in the performance. *See Lexin v. Superior Court*, 47 Cal.4th 1050, 103 Cal.Rptr.3d 767, 222 P.3d 214, 245 & n. 24 (2010). Such reasoning supports our conclusion that the fact that interested trustees serve, and even constitute a quorum, on the Board does not negate the public nature of the Board in administering a pension system for public employees.

Moreover, as the City acknowledges, the Fund is treated like a governmental body for some purposes—as outlined above. The *Boll Weevil* court suggested that such factors do not necessarily dictate that an entity is public. *See* 952 S.W.2d at 470–71. But, in the present case, the fact that the Fund is treated like a governmental entity in some respects is at least consistent with our decision that it is a public entity for the other reasons cited above.

Finally, the Fund cites cases from the First Court of Appeals recognizing the Fund and another municipal pension fund are public agencies when addressing issues not presented in our case. For instance, when addressing whether a firefighter had a right to judicial review of the Fund's decision regarding eligibility for benefits, the court stated, "The Fund's board is 'in the nature of a public administrative body.'" *Williams v. Houston Firemen's Relief and Retirement Fund*, 121 S.W.3d 415, 426 (Tex.App.–Houston [1st Dist.] 2003, no pet.) (quoting *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 728

(Tex.App.–Corpus Christi 1994, writ denied)); *see also Thayer v. Houston Mun. Employees Pension Sys.*, 95 S.W.3d 573, 577 (Tex.App.–Houston [1st Dist.] 2002, no pet.) (addressing whether Houston Municipal Employees Pension System was immune from liability in suit by employees concerning their benefits and stating, "The Pension System and its Board are state-created governmental entities ...."). Although we are not bound by our sister court, *see In re Griffith*, 485 S.W.3d 529, 536 (Tex.App.–Houston [14th Dist.] 2015, no pet.), we find these remarks persuasive because the court viewed the Fund and another municipal pension system as public entities in the same manner as we have.

**2. The Act is not an unconstitutional delegation to the Board.**

■ In light of our conclusion that the Board is a public entity, we must decide whether the Legislature established "reasonable standards" to guide the Fund in exercising the powers bestowed under the Act. *See FM Props.*, 22 S.W.3d at 873; *Boll Weevil*, 952 S.W.2d at 467.

The City argues the Legislature failed to establish reasonable standards because (1) the Act contains no limit on the rate the Board may fix for the City's contributions, (2) a board controlled by Fund beneficiaries wields arbitrary power to dictate the City's contribution rate without oversight or a right of appeal by the City, and (3) the Board sets its own standards, policies, and rules.

We will consider together the City's first two complaints because they are overlapping. The City's overriding complaint regarding the Fund is that the City has no control over the amount of its contributions and there are no guidelines for the contributions, thus subjecting the City to unlimited contributions at the will of the Board. We disagree.

The City's contributions are set by the Act and not arbitrarily decided by the Board. In particular, the City's contributions are related to member salaries and contributions. Each member in active service shall contribute an amount equal to 8.35% of the member's salary at the time of the contribution and as of July 1, 2004, an amount equal to 9% of the member's salary at the time of contribution. Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1), § 13(c). The Act then prescribes the City's contributions as follows:

> The municipality shall make contributions to the fund once every two weeks in an amount equal to the product of the contribution rate certified by the board and the aggregate salaries paid to members of the fund during the period for which the contribution is made. The board shall certify the municipality's contribution rate for each year or portion of a year based on the results of actuarial valuations made at least every three years. The municipality's contribution rate shall be composed of the normal cost plus the level percentage of salary payment required to amortize the unfunded actuarial liability over a constant period of 30 years computed on the basis of an acceptable actuarial reserve funding method approved by the board. Notwithstanding any other provision of this article, the contributions by the municipality, when added to any contributions with respect to a qualified governmental excess benefit arrangement maintained in accordance with Section 14(c) of this article, may not be less than twice the amount paid into the fund by contributions of the members.

*Id.* § 13(d).

As the Fund asserts, the City's contribution rate each year depends on the results of an actuarial valuation performed according to certain criteria and covering a three-year period. *See id.* Thus, we disagree that the Act fails to set reasonable standards for calculating the City's contributions. We characterize the City's complaint more as not liking, or having control over, those standards, but that complaint is not a basis for declaring the Act an unconstitutional delegation of power.

In this regard, the City complains that the actuary is chosen by the Board and there is no review of the actuary's conclusions. But the fact the Board chooses the actuary does not translate to the Board having control over the actuary's performance of its duties and thus the contribution rate. And, lack of review of the actuary's conclusions does not translate to an assumption that the actuary is not properly performing its duties or thus there is no reasonable standard for determining contribution rates.

Moreover, the standards regarding eligibility for, and the amount of, benefits are set forth under the Act. *See id.* §§ 4–12, 14–16, 18. We recognize the Act includes a provision entitled "Nonstatutory benefit increases," which permits an increase in benefits over those otherwise set by the Act under certain circumstances:

> ... The benefits provided by this article may be increased if:
>
> (1) an actuary selected by the board who, if an individual, is a Fellow of the Society of Actuaries, a Fellow of the Conference of Actuaries in Public Practice, or a member of the American Academy of Actuaries determines that the increase cannot reasonably be viewed as posing a material risk of jeopardizing the fund's ability to pay any existing benefit;
>
> (2) a majority of the participating members of the fund vote for the increase by a secret ballot;
>
> (3) the increase does not deprive a member, without the member's written con-

sent, of a right to receive benefits that have already become fully vested and matured in a member; and

(4) the State Pension Review Board approves the determination by the actuary selected by the board that the increase cannot reasonably be viewed as posing a material risk of jeopardizing the fund's ability to pay any existing benefit.

*Id.* § 10. However, this provision does not make the Act an unconstitutional delegation to the Board because the Legislature imposed reasonable standards for the increase in benefits including approval by an actuary, a majority of the fund members, and the State Pension Review Board— several levels of scrutiny. *See id.*

Relative to the City's third complaint, the Act does permit the Board to adopt its own "written rules, policies, and procedures," which are final and binding with respect to any matter within the Board's jurisdiction and authority. *Id.* § 2(p)(1), (p–1). Under the same section, the Act also gives the Board the following powers: to interpret the Act; correct defects, supply omissions, and reconcile inconsistencies in the Act as expedient to administer the fund for the greatest benefit of the members; employ necessary persons to properly and efficiently administer the fund; determine questions relating to eligibility for participation, service, or benefits to promote uniform administration for the benefit of all members; maintain records necessary for proper administration of the Fund; and compel witnesses to testify. *See id.* § (2)(p)(2)–(7).

We disagree that such aspects render the Act an unconstitutional delegation of power. Importantly, as set forth above, the Board does not set the standards regarding eligibility for membership, the amount of member and City contributions, or eligibility for and amount of benefits because those matters are prescribed by the Act.

*See id.* §§ 4–16, 18. Rather, the Board has the authority to establish rules, policies, and procedures "not inconsistent with the Act," *id.* § 2(p)(1), to fulfill its role of administering such benefits "as provided by [the Act]." *See id.* § 2(k). And the Act qualifies that the other powers outlined above be exercised to properly, efficiently, and uniformly administer the Fund for the benefit of its members. *See id.* § (2)(p)(2)–(7). We conclude that all of the above-outlined powers comport with the reasoning for permitting some delegations of legislative duties: the Legislature exercising such powers necessary for administering benefits to thousands of firefighters would be one of those difficulties inherent in the Legislature contending "with every detail involved in carrying out its laws." *See Boll Weevil*, 952 S.W.2d at 466.

Furthermore, contrary to the City's suggestion, the Act does not grant the Board rogue authority to act in an arbitrary manner. A variety of other provisions are expressly or implicitly intended to ensure performance of the Board's duties in compliance with the Act. Each trustee takes an oath to "diligently and honestly administer the affairs of the fund" and "not knowingly violate or willingly permit [the Act] to be violated." Tex. Rev. Civ. Stat. Ann. Art. 6243e.2(1), § 2(g). The Board must manage the Fund "according to the terms and purposes of [the Act] and all applicable sections of the code ...." *Id.* § 2(p). The Board must make all orders by recorded vote. *Id.* § 2(j). The Board must hold monthly meetings, keep records thereof, and forward minutes to each fire station and division of the fire department. *Id.* § 2(*l*), (*o*). And, the Board must provide annually to the city treasurer a report of all receipts and disbursements with respect to the Fund, a statement of fund administration, and any other such reports

that may from "time to time" be requested by the treasurer. *Id.* § 2(n).

Finally, other statutes generally applicable to public retirement systems facilitate proper discharge of the Board's duties. Every year, the Board must publish and submit a financial report to the State Pension Review Board. Tex. Gov't Code Ann. § 802.103. The review board may inspect the records of the Fund. *Id.* § 801.204. Every five years, the actuarial valuations, studies, and reports of the Fund must be audited by an independent actuary. *Id.* § 802.1012. And, the Board trustees must meet minimum educational requirements on subjects including fiduciary duties, governance, ethics, investments, actuarial matters, benefits administration, and risk management. *See* 40 Tex. Admin. Code §§ 607.110, .111, .113.

In summary, we conclude the Act is not an unconstitutional delegation of legislative duties to the Fund, as a public entity, and we overrule the City's first issue.

### B. Whether the Act violates the constitutional prohibition against special and local laws

The Texas Constitution provides, "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ... regulating the affairs of counties, cities, towns, wards or school districts." Tex. Const. Art. III, § 56(a). This provision also states that in addition to the itemized list of special laws expressly prohibited, "in all other cases where a general law can be made applicable, no local or special law shall be enacted ...." *Id.* § 56(b).

■■■ A local law is one limited to a specific geographic region of the state, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography. *Maple Run at Austin Mun. Util. Dist. v.*

*Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996). The purpose of the constitutional provision is " 'to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible.' " *Id.* (quoting *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941)). The provision prevents lawmakers from engaging in the " 'reprehensible' " practice of trading votes for the advancement of personal rather than public interests. *Id.* (quoting *Miller*, 150 S.W.2d at 1001). A law is not prohibited merely because it applies only in a limited geographical area. *Id.* The Legislature has broad authority to make classifications for legislative purposes. *See id.* " 'The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class.' " *Id.* (quoting *Rodriguez v. Gonzales*, 148 Tex. 537, 227 S.W.2d 791, 793 (1950)).

■■■ The City asserts that, by limiting the Act to a certain minimum population bracket, the Legislature ensured that the Act, like its predecessor, applies only to the City. The City further argues that the Legislature has no reasonable basis for treating firefighters in the City differently from firefighters of other "major" Texas cities.

The Fund responds that the Supreme Court of Texas and the First Court of Appeals have previously rejected the same contention raised by the City. In *Board of Managers of the Harris County Hospital District v. Pension Board of the Pension System for the City of Houston*, 449 S.W.2d 33, 34–39 (Tex.1969), the court addressed an amendment to a former statute governing a municipal pension system, applicable to Houston by virtue of the defined population bracket. The amendment

required the transfer of employee and City contributions from a municipal pension system to the pension system of a newly created hospital district after the district assumed responsibility for public hospitals, previously under the City's purview, and the City hospital employees became district employees. *See id.* at 35–36. The Supreme Court of Texas rejected the City's contention that the amendment was an impermissible local or special law because it applied only to Houston. *See id.* at 38.

Contrary to the Fund's suggestion, *Board of Managers* is not controlling in the Fund's favor because the court did not hold that a pension plan for public employees which, in effect, is limited to one municipality is always constitutional. *See id.* The court narrowly addressed an amendment to the pension statute governing transfer of contributions. *See id.* The court saw no reason that applicability to only one city bore no reasonable relation to the object to be accomplished, which it described as the "ultimate standard" for testing the constitutionality of classifications. *See id.* The court did not clearly explain what the "reasonable relation" was in that case, *see id.* although arguably the purpose of the classification was ensuring uniformity in administration of the employees' benefits by their current employer and preservation of their contributions.[3] As explained below, we conclude the Act, even if limited only to Houston, bore a reasonable relation to the object to be obtained.

But first we note that the First Court of Appeals has directly addressed a similar issue. In *Williams*, 121 S.W.3d at 432, the firefighter suing the Fund and the City concerning his benefits alleged the Act's predecessor (Article 6243e.2) was an unconstitutional local or special law because it applied only to Houston per the defined population bracket for applicability. The court concluded the statute "is reasonable in light of the series of statutes that make similar provision for firefighters in the other population centers of the state, and it operates equally on all members of the Fund in the same position." *Id.* (citing *Bd. of Managers*, 449 S.W.2d at 38).

Although *Williams* is on point overall regarding constitutionality of the Act, the City suggests we should not follow it because the court's reasoning was flawed. According to the City, the *Williams* court wrongfully concluded that because the Legislature created a separate pension statute for each large city, these otherwise impermissible separate local or special laws somehow together became one permissible general law. The crux of the City's argument is that there is no basis for separate pension laws for five of the major Texas cities; in other words, for treating Houston differently than each of the four other cities.[4] We agree that the *Williams* court did not address whether such classifications bore a reasonable relation to the object sought to be obtained

---

3. The City argues the present case is distinguishable from *Board of Managers* because that court relied on the fact that the wording of the statute, unlike the Act, left room for other cities, as they grow or shrink, to fall within the population bracket of cities to which the statute applied. The court did suggest the statute had such aspect because it was applicable to any city having 900,000 or more inhabitants "according to any future Federal census." *See Bd. of Managers*, 449 S.W.2d at 38. But the court also suggested the statute would apply only to Houston because it required governmental subdivisions to elect whether to create a pension system within ninety days after enactment of the statute. *See id.* Nonetheless, the court focused on whether a classification making a statute applicable to only one city bore a reasonable relation to the object to be accomplished. *See id.*

4. Those cities are San Antonio, Dallas, Austin, and El Paso.

and relied solely on the fact that Houston was not unique in having a separate system. *See id.* But, we will take *Williams* a step further and conclude the creation of a separate system for Houston satisfied the reasonable-relation standard.

 In this regard, we agree with some of the considerations set forth by the Fund for treating Houston differently than the other major cities: Houston is one-third larger than the next largest city, San Antonio, and is located within a much more industrial area than the others in terms of the port, refineries, and chemical plants. These factors would translate to more service calls for firefighters and greater risk of injury or death and thus a reason to treat the firefighters in Houston differently than those in the other cities with respect to benefits, including disability and survivor benefits, and encourage employment as a firefighter in Houston. " 'There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.' " *Texas Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939) (quoting *Middleton v. Tex. Power & Light Co.*, 249 U.S. 152, 157, 39 S.Ct. 227, 63 L.Ed. 527 (1919)). As the Fund acknowledges, we do not know that the Legislature necessarily considered these factors; but the City bore the burden to prove there was no reasonable basis for treating Houston differently than other cities, and because we can conceive of a reasonable basis, the City has not satisfied its burden.[5]

Finally, the City asserts that *Miller* supports its position. In that case, county taxpayers challenged a statute authorizing the commissioner of counties with a certain population bracket, which encompassed only El Paso County, to levy a tax to promote growth and development in the county. *See Miller*, 150 S.W.2d at 1000–002. In holding the statute was an unconstitutional local or special law, the supreme court stated there was no distinction between El Paso County and other counties that supported a peculiar need to use public funds to promote growth and development only in El Paso County. *See id.* at 1002–003. *Miller* is distinguishable from the present case because we have conceived of a reason for treating firefighters in Houston differently than those in other cities. Further, the purpose of the Act in compensating firefighters who provide a service to the public, as opposed to the economic-bolstering aspect of the *Miller* statute, negates the City's suggestion that the Act amounts merely to "meddling in local matters." *See City of Austin v. City of Cedar Park*, 953 S.W.2d 424, 431 (Tex.App.–Austin 1997, no writ) (recognizing purpose of Article III, section 56 as stopping "the legislature from meddling in local matters). And we reject the City's assertion that "Nowhere does the Constitution authorize" this sort of alleged "meddling" because the Constitution does authorize the Legislature to create pension systems for public employees. *See* Tex. Const. Art. XVI, § 67(a)(1).

Because the Act is not an unconstitutional local or special law, we overrule the City's second issue.

---

**5.** The Fund presents a list of numerous statutes applicable only to one geographical area because of the defined population bracket or other restrictions. We need not recite these statutes because it is undisputed such laws exist, and the issue is whether there was a reasonable basis for making the particular statute at issue applicable, in effect, to only one city.

## C. Whether the Act violates the constitutional requirement that cities have a choice in their pension systems

██ In its third issue, the City argues that Article XVI, Section 67(c) permits the City to choose the pension system for its firefighters and thus the Act imposed on the City by the Legislature is unconstitutional.

As mentioned above, Section 67 first includes subsection (a)(1) stating, in pertinent part, "The legislature may enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers." Tex. Const. Art. XVI, § 67(a)(1). Subsection (c) then provides:

c) Local Retirement Systems. (1) The legislature shall provide by law for:

(A) the creation by any city or county of a system of benefits for its officers and employees;

(B) a statewide system of benefits for the officers and employees of counties or other political subdivisions of the state in which counties or other political subdivisions may voluntarily participate; and

(C) a statewide system of benefits for officers and employees of cities in which cities may voluntarily participate.

(2) Benefits under these systems must be reasonably related to participant tenure and contributions.

*Id.* § 67(c).

The City relies on the mandate under subsection (c) that the Legislature provide for creation by cities and counties of their own pension systems and provide for a statewide system in which cities or counties may voluntarily participate. *See id.* The City suggests that subsections (a)(1) and (c) may be harmonized in alternative ways to give meaning to both provisions: subsection (a)(1) gives the Legislature the right to create pension systems for entities other than cities or counties while subsection (c) governs systems for cities and counties; or we could declare the Act is constitutional only to the extent that it defers to the City's choice if it decides to create its own system or join a statewide system. Alternatively, the city suggests that to the extent subsections (a)(1) and (c) conflict, subsection (c) is controlling as the more specific provision.

We first note that the Legislature complied with subsection (c) by enacting the enabling laws outlined therein: statutes granting incorporated cities and counties the authority to create local pension systems; *see* Tex. Rev. Civ. Stat. Ann. art. 6243k (West 2010); *id.* art. 6228j (West 2010); and acts creating statewide programs in which cities or counties and special districts may voluntarily participate; *see* Tex. Gov't Code Ann. §§ 841.001–845.507; 851.001–855.608 (West 2012 & Supp. 2016); *see also* Tex. Att'y Gen. LO-JM-1142, 1990 WL 508181, at *3 (1990) (stating the above-cited systems were created pursuant to Texas Constitution Article XVI, Section 67(c)).

Regardless, the City suggests that any system for municipal or county employees (including the Act) that is not one of the systems defined under subsection (c), is unconstitutional; or alternatively any such system is at least unconstitutional if the City decides to create its own system or join a statewide system. In contrast, the Fund suggests the Act is constitutional under the broad grant of powers in subsection (a)(1) and the purpose of subsection (c) is to allow cities "to fill in the gaps" where the Legislature has not created a system for a specific city's employees. We agree with the Fund based on the language and history of section 67, an Attorney General opinion, and case law.

First, nothing in Section 67 states that the systems described under subsection (c) are the exclusive ones permitted for a city or prohibits the Legislature from creating other systems for a city. *See* Tex. Const. Art. XVI, § 67. Rather, Section 67 gives the Legislature broad authority to create pension systems for public employees. *See id.* § 67(a)(1).

Additionally, the Fund cites the Texas Legislative Council's analysis of the then-proposed Section 67, which stated that a purpose was consolidating the constitutional provisions relating to state and local retirement systems into one section.[6] The Fund also relies on a Texas Attorney General opinion citing a bill analysis when confirming Section 67 was intended to combine various detailed constitutional provisions regarding pension laws into a more concise provision. *See* Tex. Att'y Gen. LO-JM-1142, 1990 WL 508181, at *2.[7] These sources necessarily refer, in part, to the former Article III, Sections 51-e and 51-f, which were repealed when Section 67 was adopted. Like the current subsection 67(c), those former provisions permitted cities to establish their own pension systems and authorized the legislature to create a statewide system in which a city's participation was voluntary.

As mentioned above, before Section 67, there was no constitutional provision expressly giving the Legislature broad authority to enact pension systems, but there was no constitutional provision forbidding such actions. The Legislature had already exercised such authority by creating a pension system for many cities, including the City (Article 6243e), which had operated under such a system for almost forty years. In fact, the City continued operating under former Article 6243e even after adoption of former Sections 51-e and 51-f. Then, Section 67(a)(1) made express the previously exercised broad authority of the Legislature to create pension systems. Accordingly, we agree with the Fund that Section 67(c) was intended to consolidate existing constitutional provisions regarding pension systems into one provision but not make the systems now consolidated into subsection (c) exclusive for cities and counties and invalidate Legislature-imposed systems.[8]

In fact, the Attorney General confirmed that one objective of Section 67, accomplished through subsection (a)(1), "was a grant of authority, conferring very flexible power on the legislature to establish retirement and disability systems." *Id.* The Attorney General quoted a bill analysis which summarized, " 'This grant of power is more flexible than present provisions which authorize specific systems in very narrow terms and **gives constitutional status to whatever systems or programs the Legislature may create** subject to the following general requirements [regarding sound actuarial principles and that funds be held in trust for members].' " *Id.* (emphasis added). Significantly, the Attorney General listed a variety of pension systems for firefighters, police officers, and other municipal employees that subsection (a)(1) would "sanction," including Article 6243e.2

---

6. http://www.lrl.state.tx.us/scanned/ Constitutional_Amendments/amendments64_ tlc_1975-04-22.pdf (last visited September 2, 2016).

7. The Attorney General was asked to opine regarding the types of retirement plans that an appraisal district may offer its employees. *See* 1990 WL 508181, at *1. Although the ultimate conclusion is not germane to the

present case, the initial discussion regarding the intent behind Section 67 is relevant.

8. Section 67 also includes provisions relating to other pension systems not at issue in this case including for state employees and the judiciary. *See* Tex. Const. Art. XVI, § 67(b), (d).

(the predecessor to the current Act), which was the operative statute at the time of the Attorney General Opinion. *Id.* The Attorney General also acknowledged the directives to the Legislature in subsection (c). *See id.* at *3. However, the Attorney General clearly did not view subsection (c) as rendering unconstitutional Article 6243e.2 which (like the current Act) was enacted pursuant to the broad powers granted under subsection (a)(1):

> while section 67 of article XVI does direct the legislature to establish certain retirement and disability systems, it also grants broad authority to the legislature to establish other retirement and disability systems for public employees. It does not set forth any exclusive list of the the [sic] retirement and disability systems that could be established for public employees . . . .

*Id.*

Finally, in *Williams*, the First Court of Appeals, when addressing various aspects of the firefighter's claims relative to determinations regarding benefits, remarked that the Act "is promulgated pursuant to" Section 67(a). *See* 121 S.W.3d at 432, 438.

Although we are not bound by the interpretations of our sister court, *see Griffith*, 485 S.W.3d at 536, or the Attorney General, *see Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex.1996), they are persuasive as consistent with the language and history of Section 67, as explained above.[9]

In summary, because we conclude that the Act is constitutional under Section 67, we overrule the City's third issue.

## D. Whether the Act violates a constitutional requirement that pension benefits be reasonably related to a participant's contributions

■ Finally, in its fourth issue, the City asserts that the Act violates Article XVI, Section 67(c)(2) of the Texas Constitution which provides, "Benefits under these systems must be reasonably related to participant tenure and contributions." Tex. Const. Art. XVI, § 67(c)(2). The City cites evidence and examples of application of the Act to purportedly show that firefighters' retirement benefits are highly disproportionate to their salaries and contributions.

However, subsection (c)(2) is inapplicable to the Act because by its own language, subsection (c)(2) applies only to the pension systems described under subsection (c)(1)—as discussed above, a system created by a city or county or a statewide

---

**9.** The Fund also relies on *Howerton v. City of Fort Worth*, 231 S.W.2d 993, 994–96 (Tex.Civ.App.–Fort Worth 1950), *rev'd on other grounds by City of Fort Worth v. Howerton*, 149 Tex. 614, 236 S.W.2d 615 (1951), in which the court addressed constitutionality of Article 6243i—a police officers' pension system which because of the defined population bracket applied to Fort Worth. The court rejected the city's argument that Article 6243i was unconstitutional because Sections 51–e and 51–f of the Constitution made creation by a city of its own system or voluntary participation in a statewide system the exclusive pension systems for city employees. *See id.* Although we agree overall with the Fund's position, we do not rely on *Howerton* because the Court of Appeals's decision was reversed by the Supreme Court of Texas. However, we also do not construe the supreme court's decision as supporting the City's position. The supreme court held that the Legislature lacked authority to enact Article 6243i because Fort Worth had already adopted a system as authorized by Section 51-e and the Legislature could not, via statute, override the pre-existing system permitted under the Constitution. *See Howerton*, 236 S.W.2d at 618. In the present case, the City was not participating in its own system or a statewide system when the Act was enacted; and when *Howerton* was decided, there was no constitutional provision granting the Legislature broad authority to create pension systems as existed when the Act was enacted.

system in which a city or county may choose to participate. *See id.* § 67(c)(1), (2). The Act was enacted pursuant to subsection (a)(1)—the provision granting the Legislature power to enact general laws establishing systems for retirement benefits for public employees. *See id.* § 67(a)(1). As the City complains under its third issue, the Act is not one of the systems described under subsection (c)(1). Subsection (a)(1) contains no proviso requiring that benefits under a system authorized by that subsection be reasonably related to participant tenure and contributions. *See id.* Accordingly, the City cannot show that the Act violates the Constitution on the basis that there is no such reasonable relationship. We overrule the City's fourth issue.

### III. Conclusion

In summary, the City failed to establish the Act is unconstitutional, and the Fund established it is constitutional. Accordingly, the trial court did not err by granting the Fund's motion for summary judgment and denying the City's motion for summary judgment. We affirm the trial court's judgment.