**Affirmed and Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00533-CV

---

### HOUSTON FIREFIGHTERS' RELIEF AND RETIREMENT FUND, Appellant

### V.

### CITY OF HOUSTON, SYLVESTER TURNER, TANTRI EMO, CHRIS B. BROWN, BRENDA STARDIG, JERRY DAVIS, ELLEN COHEN, DWIGHT BOYKINS, DAVE MARTIN, STEVE LE, GREG TRAVIS, KARLA CISNEROS, ROBERT GALLEGOS, MIKE LASTER, LARRY GREEN, MIKE KNOX, DAVID ROBINSON, MICHAEL KUBOSH, AMANDA EDWARDS, JACK CHRISTIE, AND THE STATE OF TEXAS, Appellees

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-36216**

---

# O P I N I O N

The Houston Firefighters' Relief and Retirement Fund sued the City of Houston and various individuals alleged to be city officials, to challenge the constitutionality of amendments to the Fund's governing statute. The Fund asserts

that the amendments facially violate article XVI, section 67(f) of the Texas Constitution and seeks declaratory, injunctive, and mandamus relief, as well as a money judgment and attorney's fees. Each of the appellees/defendants filed jurisdictional pleas, and the trial court granted them. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Houston Firefighters' Relief and Retirement Fund sued the City of Houston as well as the following individuals in their official capacities: Mayor Sylvester Turner, Finance Department Director Kelly Dowe,[1] City Controller Chris B. Brown, and Council Members Brenda Stardig, Jerry Davis, Ellen Cohen, Dwight Boykins, Dave Martin, Steve Le, Greg Travis, Karla Cisneros, Robert Gallegos, Mike Laster, Larry Green, Mike Knox, David Robinson, Michael Kubosh, Amanda Edwards, and Jack Christie (collectively "City Officials"). The Fund alleges that Senate Bill 2190 ("S.B. 2190")[2] is facially unconstitutional because it impermissibly infringes on the Board's exclusive authority under Article XVI, section 67(f) of the Texas Constitution ("Section 67(f)") to "select . . . an actuary and adopt sound actuarial assumptions to be used by the system or program."[3]

In its live pleading the Fund makes the following allegations:

(1)     Article 6243e.2(1) of the Revised Statutes governs the Fund's and the City's rights, duties, and obligations to and for the Fund. The Board of Trustees of the Fund ("Board") manages and administers the

---

[1] Dowe was a party to this appeal in an official capacity, and Dowe ceased to hold office before this court finally disposed of the appeal. Therefore, Tantri Emo, Dowe's successor was substituted automatically for Dowe as a party. *See* Tex. R. App. P. 7.2(a).

[2] Act of May 24, 2017, 85th Leg., R.S., ch. 320, 2017 Tex. Sess. Law. Serv. 738 (effective July 1, 2017).

[3] Tex. Const. art XVI, § 67(f).

2

Fund.

(2)    Article 6243e.2(1) requires each member of the Fund to contribute a set percentage of the member's salary and requires the City to make contributions based on a "contribution rate certified by the [B]oard," which must be at least twice the amount contributed by Fund members and sufficient to ensure the long-term financial well-being of the Fund.

(3)    Article XVI, section 67(a) of the Texas Constitution ("Section 67(a)") expressly authorizes the Texas Legislature to enact general laws establishing non-statewide pension systems for public employees and officers, such as article 6243e.2(1).

(4)    Section 67(f) "vests the Board with exclusive authority to 'administer the system or program of benefits,' 'hold the assets of the system or program for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the system or program,' and 'select legal counsel and an actuary and **adopt sound actuarial assumptions to be used by the system or program**.'"[4]

(4)    The version of article 6243e.2(1) in effect up until July 1, 2017 complied with this constitutional provision by leaving to the Board the exclusive authority to appoint an actuary and to determine the actuarial assumptions to be used by the Fund.

(5)    In 2017, the Texas Legislature passed and the Governor signed S.B. 2190, which substantively changed article 6243e.2(1) in ways that violate Section 67(f).

(6) By fixing certain actuarial assumptions that must be used by the Fund's actuary, including an initial assumed rate of return of seven percent, S.B. 2190 violates Section 67(f).

(7) S.B. 2190 violates Section 67(f) by imposing a new "Risk Sharing Valuation Study" (hereinafter "Valuation Study") procedure for use in setting the City's contribution rate to the Fund.  Under this procedure, the City's contribution rate may be determined by using the average of the Fund's estimate of the City's contribution rate and the City's

---

[4] (emphasis added)

estimate of that contribution. The Fund asserts that this averaging violates Section 67(f).

(8) S.B. 2190 violates Section 67(f) by allowing the City to use actuarial assumptions different from the Fund actuary's assumptions if an independent actuary recommends the assumptions.

(9) On May 30, 2017, the Board adopted an actuarial valuation report prepared by the Fund's appointed actuaries. Under this report, the City's actuarial contribution rate is 48.5% which equals approximately $148,255,000 and anticipates a return on investment on the Fund's assets of 7.25%.

(10) On May 31, 2017, the City Council passed a budget which used S.B. 2190's assumed seven percent rate of return. According to the Fund, because S.B. 2190 is unconstitutional, the City's Budget is statutorily required to employ the 7.25% rate of return certified by the Board under article 6243e.2(1) without any amendment by S.B. 2190, and a City contribution rate of 48.5%.

(11) Nonetheless the City Council passed the Budget allegedly allocating less than half of the amount that should be contributed under article 6243e.2(1) without any amendment by the allegedly unconstitutional S.B. 2190. The Fund claims that this action forced the Fund to file suit.

(12) Mayor Turner and the defendants who are City Council Members engaged in ultra vires and illegal acts or abuses of discretion in passing the budget that failed to allocate the amounts necessary to fund the City's lawful pension obligations, and these acts will irreparably injure the Fund. The act of passing and implementing the budget is causing and will cause irreparable injury to the Fund, the firefighters, and their surviving children and spouses.

In its live pleading the Fund asserts the following claims:

(1) The Fund seeks declarations under Chapter 37 of the Texas Civil Practice and Remedies Code that (a) S.B. 2190 is unconstitutional because it impermissibly infringes on the exclusive authority of the Board to "select . . . an actuary" and determine "sound actuarial assumptions" under Section 67(f); and (b) the City must allocate funding in its budgets in accordance with article 6243e.2(1) without

4

any amendment by the allegedly unconstitutional S.B. 2190, which includes the Board's adopted assumed rate of return, unless and until the Legislature modifies or supersedes the statute in compliance with the Texas Constitution.

(2) The Fund seeks a writ of mandamus compelling the City and the City Officials to allocate funding in accordance with article 6243e.2(1) without any amendment by the allegedly unconstitutional S.B. 2190.

(3) The Fund seeks a temporary and permanent injunction prohibiting the City and the City Officials from acting in reliance on S.B. 2190, an allegedly unconstitutional statute, and requiring all defendants to allocate funding in the City's budgets in accordance with article 6243e.2(1) without any amendment by the allegedly unconstitutional S.B. 2190. The Fund asserts that S.B. 2190 is facially unconstitutional because it impermissibly infringes on the Board's exclusive authority under Section 67(f) to "select . . . an actuary and adopt sound actuarial assumptions to be used by the system or program."

(4) The Fund seeks "retrospective relief in the form of a money judgment for any underpayment of monies owed by the City to the Fund for failing to act in accordance with Section 67(f) and [article 6243e.2(1) without any amendment by the allegedly unconstitutional S.B. 2190] from July 1, 2017 to the date of Final Judgment."

(5) The Fund seeks attorney's fees under section 37.009 of the Civil Practice and Remedies Code.

The Fund alleges in its live petition that the City is not immune from the Fund's claims because the Fund is bringing a claim under the Declaratory Judgments Act for which immunity from suit and immunity from liability are waived. The Fund also alleges that the Fund is suing the City Officials in their official capacities for carrying out ultra vires, unauthorized, illegal actions, and actions that constituted a failure to perform a ministerial act.

The State of Texas, by and through its Attorney General, intervened in the

case in the trial court for the sole purpose of defending S.B. 2190's constitutionality. The State of Texas argued in the trial court that S.B. 2190 is constitutional.[5]

The City and the City Officials asserted pleas to the jurisdiction asking the trial court to dismiss all of the Fund's claims for lack of subject-matter jurisdiction, citing various grounds, including that their governmental immunity had not been waived. The trial court heard the Fund's application for a temporary injunction and the pleas to the jurisdiction at the same time. The next day, the trial court signed orders sustaining the pleas to the jurisdiction and dismissing all of the Fund's claims, creating a final judgment. On the same day, the trial court signed another order stating that the court had granted the pleas to the jurisdiction and dismissed all claims and that the trial court believed that it was proper to dismiss these claims based on the pleas. But, the trial court stated that "in the alternative, should the dismissal [be] found to have been granted in error, the Court enters this Order [denying the Fund's application for temporary injunction]."

## II. ISSUES AND ANALYSIS

In three appellate issues the Fund poses the following questions:

(1) Did the trial court err in granting the City's plea to the jurisdiction when the Fund properly pleaded for a declaratory judgment that S.B. 2190 is unconstitutional?

(2) Did the trial court err in granting the City Officials' pleas to the jurisdiction when the Fund alleged that they engaged in ultra vires conduct by acting pursuant to an unconstitutional statute and failing to perform a ministerial duty?

---

[5] The State of Texas also has filed a brief in this appeal. The record does not reflect that any party moved to strike the State of Texas's intervention, nor has any party challenged this intervention on appeal. The Fund did not assert any claims against the State of Texas. In this opinion, we need not and do not address the propriety of the State of Texas's intervention.

6

(3) Did the trial court abuse its discretion in its alternative ruling denying the Fund's request for a temporary injunction?

**A.      Did the trial court err in granting the City's jurisdictional plea because the Fund pleaded that S.B. 2190 is unconstitutional?**

The City is a governmental entity that generally enjoys governmental immunity from suit and from liability as to claims based on its performance of a governmental function unless its governmental immunity has been waived. *See Johnson v. City of Houston*, No. 14-15-00176-CV, 2016 WL 1237859, at *2 (Tex. App.—Houston [14th Dist.] Mar. 29, 2016, pet. denied) (mem. op.). If the City is immune from suit under the doctrine of governmental immunity, courts lack subject-matter jurisdiction over the claims against the City. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012); *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). Generally, for there to be a waiver of immunity from suit, the Texas Legislature must have waived immunity from suit as to the claim in question, and the waiver must be manifested by clear and unambiguous language. *See* Tex. Gov't Code Ann. § 311.034 (West, Westlaw through 2017 R.S.) (providing that a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language); *Tooke v. City of Mexia,* 197 S.W.3d 325, 332–33 (Tex. 2006).

The Fund asserts that by pleading a claim for a declaratory judgment that S.B. 2190 violates Section 67(f), the Fund established a waiver of the City's governmental immunity under both the Declaratory Judgments Act and common law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West, Westlaw through 2017 R.S.); *City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 n.6 (Tex. 2009). In the Declaratory Judgments Act, the Texas Legislature requires that a municipality be made a party to a claim seeking a declaratory judgment that a municipal ordinance or franchise is unconstitutional. *See* Tex. Civ. Prac. & Rem. Code Ann.

7

§ 37.006(b). The Supreme Court of Texas has concluded that this waiver extends to any governmental entity when a party seeks a declaratory judgment that the entity's legislative pronouncement is unconstitutional and has spoken generally of "governmental entities" being properly joined in such cases. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010); *Heinrich*, 284 S.W.3d at 373 n.6; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 445–46 (Tex. 1994). Although the City has an interest in S.B. 2190, the Texas Legislature—not the City—enacted S.B. 2190. We presume for the sake of argument that the City's governmental immunity is waived or does not apply in today's case in all situations in which the State's sovereign immunity[6] would be waived or would not apply had the Fund joined the State as a defendant.

A defendant may seek a dismissal on the ground that the trial court lacks subject-matter jurisdiction over claims against that defendant due to governmental immunity by filing a plea to the jurisdiction. *See City of Dallas v. Carbajal,* 324 S.W.3d 537, 538 (Tex. 2010) (per curiam). Whether a court has jurisdiction is a question of law that we review de novo. *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex. 2010) (per curiam). Therefore, we use this standard in reviewing a ruling on a plea to the jurisdiction. *State v. Holland,* 221 S.W.3d 639, 643 (Tex. 2007). When performing our review of a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002). When, as in today's case, parties have filed pleas to the jurisdiction challenging the pleadings, we must

---

[6] Often, courts use the terms "sovereign immunity" and "governmental immunity" interchangeably even though the law views the two as distinct concepts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity" refers to a State's immunity from suit and liability. *Id.* Its protection extends not only to the State, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004).

Under its first issue, the Fund asserts that if the Fund asks in its petition for a declaratory judgment that S.B. 2190 is unconstitutional, the City's governmental immunity is waived. Because the Fund requested this relief in its petition, the Fund argues, the trial court erred in sustaining the City's jurisdictional plea based on governmental immunity. But, the City asserts that the Fund's constitutional claims against the City are not viable or valid. The City's governmental immunity is waived only to the extent the Fund has pleaded a viable or valid constitutional claim. *See Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 8, 13, 14 (Tex. 2015); *Rose v. Houston Indep. Sch. Dist.*, No. 14-16-00687-CV, 2017 WL 4697889, at *2, *10 (Tex. App.—Houston [14th Dist.] Oct. 19, 2017, no pet.) (mem. op.); *City of Houston v. Johnson*, 353 S.W.3d 499, 504, 505 (Tex. App.— Houston [14th Dist.] 2011, pet. denied); *Transformative Learning Sys. v. Texas Education Agency*, 572 S.W.3d 281, 286, 293 (Tex. App.—Austin 2018, no pet.). Thus, the Fund's request for a declaratory judgment that S.B. 2190 is unconstitutional is not enough to show a waiver of the City's governmental immunity. *See Klumb*, 458 S.W.3d at 8, 13, 14; *Rose*, 2017 WL 4697889, at *2, *10; *Johnson*, 353 S.W.3d at 504, 505; *Transformative Learning Sys.*, 572 S.W.3d at 286, 293.

The Fund argues that the line of cases upon which the City relies is limited to claims for violation of constitutional equal protection. We disagree. These cases speak in general terms and do not limit their scope to alleged equal-protection violations. *See Klumb*, 458 S.W.3d at 13 (stating that "[w]hile it is true that sovereign immunity does not bar a suit to vindicate constitutional rights . . .

9

immunity from suit is not waived if the constitutional claims are facially invalid"); *Rose*, 2017 WL 4697889, at *10 (stating that "[i]n the absence of a viable constitutional claim, [the governmental entity] did not waive its immunity, and the trial court properly granted the plea as to [the plaintiff's] constitutional claim"). In addition, the same rule has been applied to alleged violations of the takings provision and the due course of law provision of the Texas Constitution. *See Rose*, 2017 WL 4697889, at *2, *10 (due course of law provision) *Transformative Learning Sys.*, 572 S.W.3d at 286, 293 (takings provision).

The Fund relies on *Patel v. Department of Licensing & Regulation* for the proposition that the City's governmental immunity is waived because in its petition the Fund challenges the constitutionality of S.B. 2190. *See* 469 S.W.3d 69, 77 (Tex. 2015). In *Patel*, the trial court denied a plea to the jurisdiction by certain governmental entities as to the plaintiffs' claims seeking declaratory and injunctive relief on their as-applied constitutional claims but granted summary judgment to the defendants. *Id*. at 75. On appeal, the governmental entities argued that because the trial court correctly granted summary judgment on the merits of the constitutional claims, the plaintiffs did not prove valid constitutional claims and therefore the plaintiffs' pleadings were insufficient to give the trial court jurisdiction. *Id*. at 77. The Supreme Court of Texas concluded that the plaintiffs pleaded viable constitutional claims, and the high court ruled in the plaintiffs' favor on the merits of these claims. *Id*. at 77, 80–90.

In the case pending before us, the City asserts that the Fund has not pleaded viable constitutional claims and does not rely on any summary-judgment ruling. In support of its argument, the City notes that the trial court sustained the City's jurisdictional plea based on governmental immunity. Therefore, we conclude that the *Patel* decision is not on point and that the Fund's request for a declaratory

10

judgment that S.B. 2190 is unconstitutional, alone, is not sufficient to show a waiver of the City's governmental immunity. *See Patel*, 469 S.W.3d at 77, 80–90; *Klumb*, 458 S.W.3d at 8, 13, 14; *Ross*, 2017 WL 4697889, at *2, *10; *Johnson*, 353 S.W.3d at 504, 505; *Transformative Learning Sys.*, 572 S.W.3d at 286, 293. Instead, we must determine if the Fund has asserted viable constitutional claims.

## B. Has the Fund asserted viable claims that S.B. 2190 facially violates Section 67(f)?

### 1.    *Background*

Since early in the Twentieth Century, there has been some form of pension system for the City's firefighters. *See City of Houston v. Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d 469, 472 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Beginning in 1937, the City operated the pension fund for its firefighters under Revised Statutes article 6243e. *See* Act of Apr. 6, 1937, 45th Leg., R.S., ch. 125, §§ 1–29, 1937 Tex. Gen. Laws 229, 229–41 (codified at Tex. Rev. Civ. Stat. art. 6243e, since amended); *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472.

In 1975, Texas voters approved an amendment to the Texas Constitution adding article XVI, section 67, entitled "State and local retirement systems." *See* Tex. Const. art. XVI, § 67(a)(1). Section 67(a) authorized the Texas Legislature to enact general laws establishing systems and programs of retirement for public employees and officers. *See id*.; *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472. Under Section 67(a), the financing of benefits must be based on sound actuarial principles. *See* Tex. Const. art. XVI, § 67(a)(1); *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472. Section 67 was the first provision of the Texas Constitution to expressly grant general authority to the Texas Legislature to enact pension laws, although the Texas Legislature had

enacted such laws in the past based on its implied authority to do so. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740–41 (Tex. 1928); *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472.

In 1975, the Legislature also enacted Revised Statutes article 6243e.2, providing for a firefighters' retirement fund which, due to the population of the cities to which the statute pertained, applied only to Houston. *See* Act of May 27, 1975, 64th Leg., R.S., ch. 432, §§ 1–32, 1975 Tex. Gen. Laws 1135, 1135– 49, *repealed by* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 3, 1997 Tex. Gen. Laws 4794, 4811; *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472.

In 1993, Texas voters approved an amendment to the Texas Constitution adding subsection (f) to article XVI, section 67. *See* Tex. Const. art. XVI, § 67(f). Section 67(f) provides that the board of trustees of a system or program that provides retirement and related disability and death benefits for public officers and employees and that does not participate in a statewide public retirement system shall select an actuary and adopt sound actuarial assumptions to be used by the system or program. *Id*.

The City operated under Revised Statutes article 6243e.2 until 1997, when the Texas Legislature repealed this statute and enacted article 6243e.2(1) of the Revised Statutes. *See* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, §§ 1– 5, 1997 Tex. Gen. Laws 4794, 4794–4811 (codified at Tex. Rev. Civ. Stat. art. 6243.2(1), since amended); *Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d at 472. In 2017, the Texas Legislature enacted S.B. 2190, amending article 6243e.2(1) in various ways, some of which the Fund alleges facially violate Section 67(f). *See* Act of May 24, 2017, 85th Leg., R.S., ch. 320, 2017 Tex. Sess. Law. Serv. 738 (effective July 1, 2017).

12

## 2.    *Text of Section 67*

Section 67, entitled "State and local retirement systems," provides as follows:

(a) General Provisions. (1) The legislature may enact general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers. **Financing of benefits must be based on sound actuarial principles.** The assets of a system are held in trust for the benefit of members and may not be diverted.

(2) A person may not receive benefits from more than one system for the same service, but the legislature may provide by law that a person with service covered by more than one system or program is entitled to a fractional benefit from each system or program based on service rendered under each system or program calculated as to amount upon the benefit formula used in that system or program. Transfer of service credit between the Employees Retirement System of Texas and the Teacher Retirement System of Texas also may be authorized by law.

(3) Each statewide benefit system must have a board of trustees to administer the system and to invest the funds of the system in such securities as the board may consider prudent investments. In making investments, a board shall exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income therefrom as well as the probable safety of their capital. The legislature by law may further restrict the investment discretion of a board.

(4) General laws establishing retirement systems and optional retirement programs for public employees and officers in effect at the time of the adoption of this section remain in effect, subject to the general powers of the legislature established in this subsection.
. . .
(f) Retirement Systems Not Belonging to a Statewide System. The board of trustees of a system or program that provides retirement and

13

related disability and death benefits for public officers and employees and that does not participate in a statewide public retirement system shall:

(1) administer the system or program of benefits;

(2) hold the assets of the system or program for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the system or program; and

(3) select legal counsel and an actuary and **adopt sound actuarial assumptions** to be used by the system or program.

Tex. Const. art XVI, § 67 (emphasis added).

In interpreting the Texas Constitution, Texas courts rely heavily on the literal text. *See Eddington v. Dallas Police & Fire Pension Sys.*, —S.W.3d—,—, 2019 WL 1090799, at *5 (Tex. 2019). Though we may consider (1) the constitutional provision's history, (2) "the conditions and spirit of the times" in which the provision was adopted, (3) "the prevailing sentiments of the people" who framed and adopted the provision, and (4) "the evils intended to be remedied, and the good to be accomplished," we must give effect to the provision's plain language. *See id.*; *Arnold v. Leonard*, 273 S.W. 799, 801–03 (Tex. 1925) (stating that a court's duty is to give effect to the will of the people of Texas, as expressed by the plain meaning of the Texas Constitution). We presume the constitution's language was carefully selected, and we interpret its words as people generally understand them. *See Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). And, we construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of one another. *See id.*

14

### 3. *Relevant Portions of S.B. 2190*

#### a. **Required Assumptions**

In S.B. 2190, the Texas Legislature added section 13B to Revised Statutes article 6243e.2(1). *See* Act of May 24, 2017, 85th Leg., R.S., ch. 320, §1.14, 2017 Tex. Sess. Law. Serv. 738, 751–53 (codified at Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B). Section 13B provides in pertinent part as follows:

> (a) The [Fund] and the [City] shall separately cause their respective actuaries to prepare a risk sharing valuation study in accordance with this section and actuarial standards of practice. A risk sharing valuation study must:
>
> . . .
>
> (6) subject to Subsection (g) of this section, be based on the following assumptions and methods that are consistent with actuarial standards of practice:
>
> . . .
>
> (H) the assumed rate of return, subject to adjustment under Section 13E(c)(2) of this article or, if Section 13C(g) of this article applies, adjustment in accordance with a written agreement, except the assumed rate of return may not exceed seven percent per annum;
>
> (I) the price inflation assumption as of the most recent actuarial experience study, which may be reset by the board by plus or minus 50 basis points based on that actuarial experience study;
>
> (J) projected salary increases and payroll growth rate set in consultation with the municipality's finance director; and
>
> (K) payroll for purposes of determining the corridor midpoint and municipal contribution rate must be projected using the annual payroll growth rate assumption, which for purposes of preparing any amortization schedule may not exceed three percent
>
> . . .

*Id*. In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527

(Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute. *Id*. If the meaning of the statutory language is unambiguous, we are to adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id*.

Under the unambiguous text of section 13B, the Fund and the City each must cause its respective actuary to prepare a Valuation Study in accordance with section 13B and actuarial standards of practice. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B (West, Westlaw through 2017 R.S.). The Texas Legislature requires the Fund's actuary to base a Valuation Study on certain actuarial assumptions listed in section 13B, for example the assumed rate of return used by the Fund's actuary may not exceed seven percent per year (collectively the "Required Assumptions"). *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(a)(6)(H)-(K). The Texas Legislature imposes the same requirement on the City's actuary. *See id*.

### b. Required Averaging of Contribution Rates

Under section 13C, the Fund and the City each must cause its respective actuary to prepare an initial Valuation Study. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13C(a). If, after exchanging proposed initial Valuation Studies under section 13C(b)(2), the difference between the estimated municipal contribution rate for any fiscal year recommended in the proposed initial Valuation Study prepared by the Fund's actuary and the estimated municipal contribution rate for any fiscal year recommended in the proposed initial Valuation Study prepared by the City's actuary is less than or equal to two percentage points, the estimated municipal contribution rate for that fiscal year recommended by the Fund's actuary will be

16

the estimated municipal contribution rate. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13C(c).

If this difference is greater than two percentage points, the City's actuary and the Fund's actuary shall have 20 business days to reconcile the difference. *Id*. If, as a result of these reconciliation efforts, the difference in any fiscal year is reduced to less than or equal to two percentage points, the estimated municipal contribution rate recommended by the Fund's actuary for that fiscal year will be the estimated municipal contribution rate. *Id*. If, after 20 business days, the City's actuary and the Fund's actuary are not able to reach a reconciliation that reduces the difference to an amount less than or equal to two percentage points for any fiscal year, the City's actuary and the Fund's actuary each must deliver to the City's finance director and the Fund's executive director a final initial Valuation Study with any agreed-to changes, marked as the final initial Valuation Study for each actuary. *Id*. In this scenario, the finance director and the executive director shall execute a joint addendum to the final initial Valuation Study that is a part of each final initial Valuation Study for all purposes and that reflects the arithmetic average of the estimated municipal contribution rate for each fiscal year in which the difference was greater than two percentage points. *Id*.

As soon as practicable after the end of a fiscal year, the Fund's actuary and the City's actuary each must prepare a proposed Valuation Study based on the fiscal year that just ended. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(b). If, after exchanging proposed Valuation Studies, it is found that the difference between the estimated municipal contribution rate recommended in the proposed Valuation Study prepared by the Fund's actuary and the estimated municipal contribution rate recommended in the proposed Valuation Study prepared by the City's actuary for the corresponding fiscal year is less than or equal to two

17

percentage points, the estimated municipal contribution rate recommended by the Fund's actuary will be the estimated municipal contribution rate, and the proposed Valuation Study prepared for the Fund is considered to be the final Valuation Study for the fiscal year. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(f).

If this difference is greater than two percentage points, the City's actuary and the Fund's actuary have 20 business days to reconcile the difference, provided that, without the mutual agreement of both actuaries, the difference in the estimated municipal contribution rate recommended by the municipal actuary and the estimated municipal contribution rate recommended by the fund actuary may not be further increased. *Id*. If, as a result of these reconciliation efforts, the difference is reduced to less than or equal to two percentage points, subject to any adjustments under section 13E or 13F, the estimated municipal contribution rate proposed under the reconciliation by the Fund's actuary will be the estimated municipal contribution rate, and the Fund's Valuation Study is considered to be the final Valuation Study for the fiscal year. *Id*. If, after 20 business days, the Fund's actuary and the City's actuary are not able to reach a reconciliation that reduces the difference to an amount less than or equal to two percentage points, subject to any adjustments under Section 13E or 13F, the City's actuary and the Fund's actuary each shall deliver to the City's finance director and the Fund's executive director a final Valuation Study with any agreed-to changes, marked as the final Valuation Study for each actuary. *Id*. In this scenario, not later than the 90th day before the first day of the next fiscal year, the finance director and the executive director shall execute a joint addendum to the final Valuation Study for the fiscal year that reflects the arithmetic average of the estimated municipal contribution rates for the fiscal year stated by the City's actuary and the Fund's actuary. *Id*.

Under provisions of article 6243e.2(1) added by S.B. 2190, in certain scenarios, the estimated municipal contribution rate recommended by the Fund's

18

actuary will be the estimated municipal contribution rate. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), §§ 13B, 13C. If, after 20 business days, the Fund's actuary and the City's actuary are not able to reach a reconciliation that reduces the difference between the two estimated municipal contribution rates to an amount less than or equal to two percentage points, subject to any adjustments under Section 13E or 13F, the estimated municipal contribution rate will be the arithmetic average of the estimated municipal contribution rates for the fiscal year stated by the City's actuary and the Fund's actuary in the final Valuation Study (the "Required Averaging of Contribution Rates").

### c. Resolution by Independent Actuary

At least once every four years, section 13D, a provision added by S.B. 2190, requires the Fund to direct its actuary to conduct an actuarial experience study in accordance with actuarial standards of practice ("Experience Study"). *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(a). Under section 13D the City's actuary may present to the Fund and the Fund's actuary (1) any assumptions and methods recommended by the City's actuary that differ from the assumptions and methods recommended by the Fund's actuary, and (2) the rationale of the City's actuary for each method or assumption the actuary recommends and determines to be consistent with standards adopted by the Actuarial Standards Board. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(c)–(f). If the City's actuary and the Fund's actuary cannot agree on all of the assumptions and methods for the Experience Study, an "independent actuary" is selected under a statutory procedure. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(g)–(i). If the Board does not adopt an assumption or method recommended by the City's actuary to which the independent actuary agrees, section 13D authorizes the City's actuary to use that recommended assumption or method in preparing a subsequent

19

Valuation Study under section 13B, until the next Experience Study is conducted (the "Use of the Independent-Actuary Assumption"). *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(n).

### 4. *Failure to Meet the Standard Necessary to Sustain a Facial Challenge to a Statute's Constitutionality*

On appeal, the Fund asserts that Section 67(f) mandates that the Board adopt the sound actuarial assumptions to be used by the Fund's pension system. *See* Tex. Const. art XVI, § 67(f). The Fund asserts that S.B. 2190 facially violates this mandate in Article 67(f) in three ways: (1) by mandating the Required Assumptions, (2) by the Required Averaging of Contribution Rates, and (3) through the Use of the Independent-Actuary Assumption. The Fund asserts that these three allegedly unconstitutional parts of S.B. 2190 cannot be severed from the remainder of S.B. 2190, and therefore all of S.B. 2190 fails.

The Fund asserts that these three parts of S.B. 2190 facially violate Article 67(f). The Fund does not assert that any part of S.B. 2190 is unconstitutional as applied. The standard for an as-applied constitutional challenge differs markedly from the standard applied to a facial constitutional challenge. One making an as-applied constitutional challenge concedes that a statute is generally constitutional but contends that the statute is unconstitutional when applied to a particular person or set of facts. *See City of Corpus Christi v. Public Utility Commission of Texas*, 51 S.W.3d 231, 240 (Tex. 2001). But, in asserting a facial challenge to a statute, the challenger must establish that no set of circumstances exists under which the statute is valid — usually a difficult showing. *See In re S.N.*, 287 S.W.3d 183, 194 (Tex. 2009).

For a statute to facially violate a constitutional provision, the statute must by its terms always and in every instance operate unconstitutionally. *Barshop v.*

*Medina County Underground Water Conserv. Dist.*, 925 S.W.2d 618, 623 (Tex. 1996). It is not enough for the challenger to show that a statute operates unconstitutionally under some or even most circumstances. *See In re S.N.*, 287 S.W.3d at 194. To clear the facially unconstitutional hurdle, the statute must be unconstitutional in every application. *See id*. In analyzing a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice. *Id*. A court will not hold a statute facially invalid unless the statute could not be constitutional under any circumstances. *See Appraisal Review Bd. of Galveston Cty., Tex. v. Tex-Air Helicopters, Inc*., 970 S.W.2d 530, 534 (Tex. 1998).

It is undisputed that the Board is a board of trustees of a system or program that provides retirement and related disability and death benefits for public officers and employees and that does not participate in a statewide public retirement system. *See* Tex. Const. art XVI, § 67(f). And, it is undisputed that Section 67(f) requires the Board to select an actuary and to "adopt sound actuarial assumptions to be used by the system or program." *See id*.

The Fund notes that S.B. 2190 refers to the Board's ability to adopt actuarial assumptions. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(c) (referring to the date on which the Board "may consider adopting any assumptions and methods for purposes of Section 13B"); Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(n) (addressing what happens if the Board "does not adopt an assumption or method recommended by the [City's] actuary to which the independent actuary agrees"). The Fund argues that under Section 67(f) "adopt" means to choose or select and "to be used by the system or program" means that the estimated municipal contribution rate must be calculated based on the assumptions adopted by the Board, without any dilution or averaging with the assumptions of the City's

21

actuary. The Fund asserts that "[S.B. 2190] is unconstitutional[] because [S.B. 2190] takes from the Board its ability to adopt the actuarial assumptions used by the Fund's pension system." We presume, without deciding, that Section 67(f) has this meaning. Even under this presumption the three parts of S.B. 2190 the Fund challenges do not facially violate Section 67(f) because the statute does not always operate unconstitutionally. *See Barshop*, 925 S.W.2d at 623.

As to the Required Averaging of Contribution Rates, article 6243e.2(1), as amended by S.B. 2190, does not always require that the estimated municipal contribution rate stated by the Fund's actuary be averaged with the estimated municipal contribution rate stated by the City's actuary. If the difference between the estimated municipal contribution rate recommended in the proposed Valuation Study prepared by the Fund's actuary and the estimated municipal contribution rate recommended in the proposed Valuation Study prepared by the City's actuary for the corresponding fiscal year is less than or equal to two percentage points, the estimated municipal contribution rate recommended by the Fund's actuary will be the estimated municipal contribution rate. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(f). The Fund concedes in its appellate briefing that in this situation "the Fund's [Valuation Study] is used." Thus, the facial challenge to the Required Averaging of Contribution Rates fails as a matter of law because the statute does not always operate unconstitutionally. *See Appraisal Review Bd. of Galveston Cty., Tex.*, 970 S.W.2d at 534; *Barshop*, 925 S.W.2d at 623, 626–31; *In re S.N.*, 287 S.W.3d at 194–95.

The Fund asserts that even if in some situations the Fund's pension system uses the estimated municipal contribution rate from the Fund's Valuation Study, the Fund still has a valid facial challenge to the Required Assumptions. The Fund argues that under this part of S.B. 2190, the Fund must use statutorily mandated

22

actuarial assumptions in the Fund's Valuation Study. Though in some scenarios the Fund's actuary might recommend and the Board might adopt actuarial assumptions that differ from the assumptions mandated by S.B. 2190, in some instances, the Board might adopt actuarial assumptions consistent with those mandated by S.B. 2190. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(a)(6)(H)-(K). For example, the Fund's actuary might recommend, and the Fund might adopt, an assumed rate of return of 6.8% that does not conflict with the limitation on the assumed rate of return S.B. 2190 imposes. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13B(a)(6)(H). Thus, the facial challenge to the Required Assumptions fails as a matter of law because the statute does not always operate unconstitutionally. *See Appraisal Review Bd. of Galveston Cty., Tex.*, 970 S.W.2d at 534; *Barshop*, 925 S.W.2d at 623, 626–31; *In re S.N.*, 287 S.W.3d at 194–95.

As to the Use of the Independent-Actuary Assumption under article 6243e.2(1), as amended by S.B. 2190, this challenged statutory mechanism is not triggered if (1) the City's actuary and the Fund's actuary agree on all of the assumptions and methods for the Experience Study, or (2) the Board adopts the assumptions or methods recommended by the City's actuary to which the independent actuary agrees. *See* Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 13D(g)–(n). Thus, the facial challenge to the Use of the Independent-Actuary Assumption fails as a matter of law because the statute does not always operate unconstitutionally. *See Appraisal Review Bd. of Galveston Cty., Tex.*, 970 S.W.2d at 534; *Barshop*, 925 S.W.2d at 623, 626–31; *In re S.N.*, 287 S.W.3d at 194–95.

### 5. *No Waiver of the City's Governmental Immunity*

Even under a liberal construction of the Fund's live pleading, the City's governmental immunity is not waived as to each of the constitutional challenges

raised by the Fund on appeal because the Fund has not pleaded a viable or valid constitutional claim. *See Klumb*, 458 S.W.3d at 13–17; *Appraisal Review Bd. of Galveston Cty., Tex.*, 970 S.W.2d at 534; *Barshop*, 925 S.W.2d at 623, 626–31; *Rose*, 2017 WL 4697889, at *2, *10; *Johnson*, 353 S.W.3d at 504–06; *In re S.N.*, 287 S.W.3d at 194–95; *Transformative Learning Sys.*, 572 S.W.3d at 286.

The Fund's pleadings cannot be cured by amendment, and in any event, the Fund has failed to request an opportunity to amend its pleadings in this regard after the trial court sustained the City's jurisdictional plea.[7] *See Johnson*, 353 S.W.3d at 504–06; *Smith v. City of League City*, 338 S.W.3d 114, 125 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We conclude that the trial court did not err in dismissing these claims for lack of subject-matter jurisdiction. *See Klumb*, 458 S.W.3d at 13–17; *Rose*, 2017 WL 4697889, at *2, *10; *Johnson*, 353 S.W.3d at 504–06; *In re S.N.*, 287 S.W.3d at 194–95. Thus, we overrule the Fund's first issue.

## C. Did the trial court err in granting the City Officials' jurisdictional pleas?

Under its second issue the Fund argues that the trial court erred in granting the City Officials' pleas to the jurisdiction because the Fund alleged that the City Officials engaged in ultra vires conduct by acting without legal authority or by failing to perform a purely ministerial act. The Fund seeks to assert ultra vires claims against the City Officials in their official capacities. Ultra vires suits brought to require government officials to comply with statutory or constitutional

---

[7] The Fund did not request an opportunity to amend its pleadings in the trial court. On appeal, in the event this court were to find that the Fund's live petition needs to clarify the time period for which the Fund seeks money damages, the Fund requests a remand to the trial court with leave to amend its pleadings to specify this time period. This court has not found that the Fund's live petition needs to be clarified in this regard, so the condition for this request has not occurred. In any event, clarifying this point would not make any of the constitutional challenges the Fund raises on appeal viable or valid.

provisions are not prohibited by governmental immunity. *See Heinrich,* 284 S.W.3d at 372. A plaintiff in an ultra vires claim against a government official must not complain of the official's exercise of discretion, but must allege that the official acted without legal authority or failed to perform a purely ministerial act. *Heinrich,* 284 S.W.3d at 372.

In its live pleading, the Fund alleged that some of the City Officials adopted a budget for the City allocating less than the amount that should be allocated under article 6243e.2(1) without any amendment to the statute by S.B. 2190 (the "Former Statute") and that all City Officials are implementing the budget in accordance with S.B. 2190, which the Fund claims is an unconstitutional statute. The Fund alleges that these actions are ultra vires acts. On appeal, the Fund states "[t]he Fund alleged that by following the unconstitutional statutory amendment [S.B. 2190] and failing to allocate contributions in the City budget according to the [Former Statute], the [City Officials] acted *ultra vires*."

The purported lack of authority for the City Officials' alleged ultra vires actions, or the ministerial act that the City Officials allegedly failed to perform, all are premised on the validity of the Fund's constitutional claims. The Fund asserts that, because S.B. 2190 is unconstitutional in its entirety, the City Officials have no authority to act under S.B. 2190, and their actions, obligations, and duties to perform ministerial acts should be based on the Former Statute. We already have concluded that the Fund did not plead a viable or valid constitutional claim. Because the Fund's ultra vires claims are premised on its constitutional claims, we conclude that, even construing the Fund's live pleadings liberally in its favor, the Fund has not pleaded an actionable ultra vires claim and that the Fund's alleged ultra vires claims fail as a matter of law. *See Klumb*, 458 S.W.3d at 8, 9–11, 13, 17; *Transformative Learning Sys.*, 572 S.W.3d at 286, 293. Amendment could not

25

cure the Fund's pleadings. Even so, the Fund failed to request an opportunity to amend its pleadings in this regard after the trial court sustained the City's jurisdictional plea.[8] *See Johnson*, 353 S.W.3d at 504–06; *Smith*, 338 S.W.3d at 125.

We conclude that the trial court did not err in dismissing the Fund's ultra vires claims against the City Officials for lack of subject-matter jurisdiction. *See Klumb*, 458 S.W.3d at 8, 9–11, 13, 17; *Transformative Learning Sys.*, 572 S.W.3d at 286, 293. Thus, we overrule the Fund's second issue.[9]

### III. CONCLUSION

The City's governmental immunity is not waived as to each of the constitutional challenges the Fund raised on appeal because the Fund has not pleaded a viable or valid constitutional claim. Likewise, because the Fund's ultra vires claims are premised on its constitutional claims, the Fund has not pleaded any actionable ultra vires claim, and the Fund's alleged ultra vires claims fail as a matter of law. The Fund's pleadings cannot be cured by amendment, and even if they could, the Fund did not seek to amend its pleadings after the trial court sustained the City's jurisdictional plea. We conclude that the trial court did not err in dismissing the Fund's claims against the City and the City Officials for lack of subject-matter jurisdiction. Thus, we affirm the trial court's orders dismissing these claims. We need not and do not address the Fund's third issue challenging the trial court's order addressing, in the alternative, the Fund's application for

---

[8] *See* footnote 7, above. In addition, clarifying the time period for which the Fund seeks money damages would not mean that the Fund has pleaded an actionable ultra vires claim or that the Fund's alleged ultra vires claims do not fail as a matter of law.

[9] Because we overrule the second issue on this basis, we need not and do not address the City Officials' argument that under the *Patel* case a plaintiff may not properly base an ultra vires claim on the alleged unconstitutionality of the statute under which the defendant acted. *See Patel*, 469 S.W.3d at 76–77.

26

temporary injunction, and we make no comment as to whether the trial court erred in issuing this order.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.